**4 DG'S CORPORATION, Appellant,**

**v.**

**CITY OF LOCKNEY, Texas, Appellee.**

**No. 07–91–0293–CV.**

Court of Appeals of Texas, Amarillo.

May 18, 1993.

Rehearing Overruled June 15, 1993.

Edward L. Self, Plainview, for appellant.

James L. Killion, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

4 DG's Corporation perfected this appeal from a take-nothing summary judgment, rendered upon the sustainment of the City of Lockney's interposition of sovereign immunity from the corporation's claim for property damage caused by a city employee's negligent operation or use of motor-driven equipment. Because the city did not

show it was entitled to judgment as a matter of law, we will reverse and remand.

All sewage in the city's sewer system goes to a lift station, consisting of a holding tank and two sewage removal pumps, which is located near a house connected to the system and owned by the corporation. When the fluid reaches a certain level in the holding tank, the motors operating the pumps activate the pumps to remove the sewage to a treatment plant. In the event electrical power to the motors is interrupted, the pumps will not operate, but they are supposed to restart automatically when electrical power is restored.

On the occasion in question, electrical power to the pumps was interrupted and, when power was restored, the pumps did not restart. The city employee in charge did not check the pumps to insure they had restarted. Sewage backed up and flowed into the corporation's house. The corporation sought to recover its property damages from the city on allegations that an employee of the city negligently failed to determine whether the pumps had restarted.

Answering and conducting discovery, the city moved for summary judgment on the ground that it was entitled to governmental immunity from all claims and causes of action asserted by the corporation. The corporation responded, contending the city's immunity has been waived by the Texas Tort Claims Act, which statutorily provides that:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within the scope of his employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor driven equipment; ...

Tex.Civ.Prac. & Rem.Code Ann. § 101.-021(1)(A) (Vernon 1986).

The trial court, without articulating its reasoning, found that the city was entitled to summary judgment and decreed that the corporation take nothing. With a single point of error, the corporation contends the court erred in rendering the judgment, because the city did not show its entitlement to the judgment as a matter of law.

The parties are agreed that the city's operation of its sanitary sewer system is a governmental function. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.0215(a)(9), (32) (Vernon Supp.1993). Traditionally, the city would not be liable for any negligence of its employee engaged in the governmental function of the operation of the system, *Gotcher v. City of Farmersville*, 137 Tex. 12, 151 S.W.2d 565, 566 (1941), unless its sovereign immunity was waived by section 101.021(1)(A), *supra*, because, as the corporation contends, its property damage was proximately caused by the employee's negligence in the operation or use of motor-driven equipment. Thus, to merit the summary judgment rendered, the city was required to show that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548 (Tex.1985). That is, the city had to negate the corporation's pleadings that (1) its employee was negligent, or that the property damage arose from (2) the employee's operation or use of (3) motor-driven equipment. *LeLeaux v. Hamshire–Fannett School Dist.*, 835 S.W.2d 49, 51 (Tex.1992).

■ In logical progression, the immediate question is whether the city established that its sewer pumps are not motor-driven equipment. The statute does not contain a definition of the term "motor-driven equipment," but it does specify that the term does not include "equipment used in connection with the operation of floodgates or water release equipment by river authorities," or "medical equipment, such as iron lungs, located in hospitals." Tex.Prac & Rem.Code Ann. § 100.001(3)(A)–(B) (Vernon 1986).

Originally, the parties proposed that the question whether the sewer pumps are motor-driven equipment is one of first impression in Texas. Later, however, the city

cited and relied upon *Schaefer v. City of San Antonio*, 838 S.W.2d 688, 693 (Tex. App.—San Antonio 1992, no writ), as authority that its sewer pumps are not motor-driven equipment.

In *Schaefer*, an individual sought to hold the city liable for damages to his property caused by water leaking from a broken water pipe. One theory of liability was that the damage was caused by the operation or use of motor-driven equipment, because the water was propelled through the water mains by use of electrical motor-driven pumps. The appellate court, noting that the allegation of negligence related to the doing of something involving the practical application of the processes of directing and controlling water pressure, not to the practical application of processes of operating or using motor-driven equipment, concluded that controlling water pressure by use of the electric motor-driven water pumps was not operating or using motor-driven equipment within the meaning of the statute. Then, the *Schaefer* court further "conclude[d] that the water pump in question is not 'motor-driven equipment' for purposes of the Act." *Id.* at 693. In this light, the conclusion that the water pump is not motor-driven equipment was unnecessary to the preceding conclusion and, therefore, reasonably may be said to be dictum. But in any event, we do not deem the court's conclusional classification of the water pump in *Schaefer* to control the character of the sewer pumps in this cause.

The term "equipment" is an elastic one, and absent a statutory definition, one of its usual and customary meanings is "the implements (as machinery or tools) used in an operation or activity." Webster's Third New International Dictionary 768 (1976). Another definition is "whatever is used in equipping; the collective designation for the articles comprising an outfit." *Farm & Home Savings & Loan Ass'n v. Empire F. Co.*, 87 S.W.2d 1111, 1112 (Tex.Civ. App.—Austin 1935, no writ). Conformably, water pumps have been classified as equipment. *Southwestern Gas & Electric Co. v. State*, 190 S.W.2d 132, 140 (Tex.Civ. App.—Austin 1945), *aff'd*, 145 Tex. 24, 193 S.W.2d 675 (1946). Undisputed in this record is that the sewer pumps were energized by motors, and the pumps were used in the city's operation of its sanitary sewer system. Consequently, the city has not shown as a matter of law that its motor-driven pumps were not motor-driven equipment within the meaning of the statute.

█ In sequacious order, the next question is whether the city established it was not the operation or use of motor-driven equipment which caused the corporation's damage. It is the city's position that the non-use, interruption in power, or failure to start a sewage pump did not constitute "operation or use" as provided in the statute. To the contrary, the corporation contends that since the city was "using" the pumps to remove sewage from the system and relying upon the "operation" of the pumps for the intended result, its (the corporation's) damage should be held to "arise from" the "operation and use" of the pumps.

Upon the failure of the legislature to define the phrase "operation or use," the term "operation" was given its ordinary meaning of "a doing or performing of a practical work," and the term "use" was given its ordinary meaning of "to put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant Ind. Sch. D. v. Lindburg*, 766 S.W.2d 208, 211 (Tex.1989). Due to the electrical power failure, the sewer pumps were not performing their practical work of removing sewage from the holding tank to the treatment plant, but their use was to be in action or service for that given purpose. Their use is not denied by the fact that they were not in service, which caused the corporation's property damage when the city's employee failed to determine that they were not operating and not used for their purpose.

Accepting, as we must, the evidence favorable to the corporation as true, *Nixon v. Mr. Property Management*, 690 S.W.2d at 549, and adhering to the liberal interpretation that must be given to the Texas Tort Claims Act, *Salcedo v. El Paso Hosp. Dist.*,

659 S.W.2d 30, 32 (Tex.1983), it cannot be said as a matter of law that the corporation's damage did not arise from the "operation and use" of the pumps. Thus, there remains unresolved the ultimate fact issue whether the city employee's omission was negligence proximately causing the corporation's property damage which arose from the operation or use of motor-driven equipment.

It follows that the city did not establish its right to summary judgment as a matter of law. The corporation's point of error is sustained.

The judgment is reversed and the cause is remanded to the trial court.